IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

TRUSTEES OF IRON WORKERS
LOCAL UNION NO. 28 PENSION
FUND, et al.,
      Plaintiffs,

v.                                                  Civil No. 3:22cv125 (DJN)

VEI SOLUTIONS, INC.,
      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs' Motion for Default Judgment, (ECF No. 13), against Defendant VEI Solutions, Inc., ("Defendant"). Defendant did not respond to Plaintiffs' Motion or file any prior pleadings in this matter, and the deadline to do so has now passed. Accordingly, and for the reasons stated herein, Plaintiffs' Motion for Default Judgment on Count One,[1] in the amount of $57,408.54, inclusive of attorneys' fees and costs, will be GRANTED. (ECF No. 13.)

### I.    BACKGROUND

Plaintiffs are the Union, *supra* note 1, and various related benefit and trust funds

---

[1] In Count Two, Plaintiff Iron Workers Local Union No. 28 (the "Union") and the Trust Fund Plaintiffs, *infra* p. 6, seek unpaid working dues and other related payments. Plaintiffs now ask the Court to dismiss Count Two without prejudice, because, due to Defendant's failure to respond, "the amounts owed Plaintiffs Trust Funds and [the Union for working assessments, dues and other payments] are uncertain." (Memorandum in Support of Motion for Default Judgment ("Memo.") (ECF No. 14) at 12.) The Court acknowledges this request and will dismiss Count Two without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) (providing that "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment").

(collectively, the "Plaintiff Funds") provided for by agreements between the Union and the Virginia Association of Contractors, Inc., (the "Collective Bargaining Agreements"). (Complaint (ECF No. 1) ¶¶ 1–8.) Defendant VEI Solutions, Inc. is an Illinois business which transacts or has transacted business in Virginia as a contractor or subcontractor in the ironworking industry. (Complaint ¶¶ 9–10.) On July 12, 2017, Defendant executed an Adoption Agreement joining into the Collective Bargaining Agreements. (Complaint ¶ 11; Appendix to Memorandum in Support of Motion for Default Judgment ("Appendix") (ECF No. 14-1) at 35.)[2] Pursuant to the Adoption Agreement, Defendant bound itself to the Restated Agreements and Declarations of Trust ("RA & DT") establishing the various Plaintiff Funds. (Appendix at 35.) Accordingly, via its adoption of the Collective Bargaining Agreements, Defendant agreed to make monthly payments or "employer contributions" to the Plaintiff Funds. (*Id.*; Memo. at 7.)

On March 4, 2022, Plaintiffs sued Defendant for failure to remit employer contributions in violation of its obligations under the Collective Bargaining Agreements. (Complaint ¶ 15–20.) As relevant here, Plaintiffs allege in Count One that Defendant "agreed to pay . . . certain sums of money for each hour worked by Defendant's employees covered by the Collective Bargaining Agreements." (*Id.*) Despite this obligation, Defendant "failed to pay the amount[s] due . . . for work performed in the months of October 2021 through and including December 2021." (*Id.*) Thus, pursuant to the terms of the agreements and 29 U.S.C. §§ 1132(g) and 1145, Plaintiffs seek an award for unpaid contributions and interest from the date due through the date of payment, plus liquidated damages and reasonable attorneys' fees and costs. (*Id.* at 7.)

Upon Plaintiffs' request, the Clerk of Court entered default against Defendant on

---

[2] The Court employs the pagination assigned by CM-ECF.

2

November 23, 2022. (ECF No. 12.) On January 13, 2023, Plaintiffs filed their Motion and Supporting Memorandum for Default Judgment under Federal Rule of Civil Procedure 55(b). (ECF Nos. 13, 14.) In support of their Motion, Plaintiffs provide a 114-page Appendix, including declarations from Kevin Poole,[3] Michael Shockley[4] and Jacob Szewczyk.[5] (Appendix at 3, 54, 104.) On January 25, 2023, the Court identified a discrepancy in Plaintiffs' claimed interest rates and directed Plaintiffs to provide clarifying documentation. (ECF No. 15.) Plaintiffs responded on February 1, 2023 and filed an Amended Declaration of Michael Shockley with accompanying exhibits, reflecting the correct interest rates and calculations. (ECF Nos. 16, 16-2.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the two-step process for default judgment. First, under Rule 55(a), the Clerk of the Court must enter default against a party when that party has "failed to plead or otherwise defend" its case. Fed. R. Civ. P. 55(a). Then, Rule 55(b) provides that the Clerk may enter default judgment if the plaintiff alleges a claim for a "sum certain or sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for default judgment. Fed. R. Civ. P. 55(b)(2).

---

[3]     Kevin Poole is the Trustee of Plaintiffs Iron Workers Local Union No. 28 Pension Fund, Iron Workers Local Union No. 28 Health and Welfare Fund, Mid-Atlantic States District Council Participating Locals' Annuity Fund and the Iron Workers Local Union No. 28 Apprenticeship Fund. He also serves as the Business Manager, Financial Secretary and Treasurer of Iron Workers Local Union No 28. (Poole Decl. (ECF No. 14-1) at 3.)

[4]     Michael Shockley is an account manager with Lawrence C. Musgrove Associates, Inc. (Amend. Shockley Decl. (ECF No. 16-2) at 3.)

[5]     Jacob Szewczyk is a senior associate attorney with the law firm of O'Donoghue & O'Donoghue LLP, counsel of record for Plaintiffs, who completed the legal work in this case and supervised the work of associate attorneys Madison Slupe and Alexa Zogopoulos. (Szewczyk Decl. (ECF No. 14-1) at 104.)

Courts enter default judgment sparingly and instead prefer to decide cases on the merits. *See, e.g., Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953–54 (4th Cir. 1987) (setting aside default judgment entered against blameless party); *United States v. Moradi*, 673 F.2d 725, 727–28 (4th Cir. 1982) (same). To that end, although a defaulting defendant admits all well-pled factual allegations in the complaint, the Court must independently determine whether those allegations support the relief sought. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). In evaluating a motion for default judgment, the Court may conduct a hearing to determine the proper sum of damages or investigate any other matter necessary to resolve the motion. Fed. R. Civ. P. 55(b)(2). However, if "the damages are ascertained, determined, and fixed, 'or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits,'" the Court need not conduct a hearing. *Eason v. Merrigan*, 2004 WL 903756, at *1 (D.Md. 2004) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). In all circumstances, "a default judgment may not exceed [the] amount that is prayed for in the demand for judgment." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

### III. DISCUSSION

Plaintiffs have satisfied the procedural requirements for entry of Default, because the properly served Defendant has wholly failed to plead or otherwise defend the case. *See Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992) (affirming default judgment based on defendants' failure to participate in litigation). Rule 12(a) of the Federal Rules of Civil Procedure requires that a defendant serve an answer within twenty-one days of being served with the summons and complaint. Fed. R. Civ. P. 12(a). After receiving an extension of time to serve Defendant, (ECF No. 7), Plaintiffs served Defendant by and through the Illinois Secretary of

State on August 19, 2022, (ECF Nos. 8, 9); Fed. R. Civ. P. 4(h)(1)(A), (e)(1); 735 ILCS 5/2-204; 805 ILCS 5/5.25(b)-(c). Defendant failed to answer or otherwise respond within the requisite period, so the Clerk entered Default on November 23, 2022. (ECF No. 12.) Thus, Plaintiffs clear the procedural threshold of Rule 55(a).

A.  **Liability**

Having found that Plaintiffs' Motion for Default Judgment is procedurally sound, the Court must next consider whether the allegations in the Complaint support the relief that Plaintiffs seek. *Ryan*, 253 F.3d at 780. In making that determination, the Court must assume the truth of all well-pled factual allegations, except those relating to the amount of damages. *Id.*; *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Accordingly, the Court accepts the following facts as set forth in the Complaint, Plaintiffs' Memorandum in Support of Motion for Default Judgment and the supporting Appendices.

Plaintiffs' action arises under sections 502(2) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(g), 1145. Under § 1145,

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.[6]

---

[6] Section 1132(g)(2) provides that:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>  (i) interest on the unpaid contributions, or
>  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under

5

Plaintiffs the Iron Workers Local Union No. 28 Pension Fund, the Iron Workers Local Union No. 28 Health and Welfare Fund, the Mid-Atlantic States District Counsel Participating Local's Annuity Fund and the Iron Workers Local Union No. 28 Apprenticeship Fund (the "Benefit Fund Plaintiffs") are multiemployer employee benefit plans within the meaning of Sections 3(3) and (37) of ERISA. (Complaint ¶¶ 1–4.) The Funds are each administered in Roanoke, Virginia, except the Apprenticeship Fund, which is administered in Midlothian, Virginia. (*Id.*) The Benefit Fund Plaintiffs' Trustees are their designated fiduciaries as defined in Section 3(21) of ERISA. (*Id.*) The Iron Workers Management Progressive Action Cooperative Trust Fund, the Industry Advancement Fund and the Iron Workers Organizing Fund (the "Trust Fund Plaintiffs") are trust funds established and maintained according to the provisions of their respective trusts and governing documents. (*Id.* ¶¶ 5–7.) Together, the Benefit Fund Plaintiffs and the Trust Fund Plaintiffs are financed by payments or "contributions," made by employers under the terms of the Collective Bargaining Agreements with the Iron Workers Local Union No. 28. (Memo. at 6; Poole Decl. ¶ 8.)

Defendant is an Illinois business which transacts or has transacted business in Virginia as a contractor or subcontractor and an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), (12) and (14) of ERISA and Section 3 of the Multiemployer Pension Plan Amendments Act of 1980. (Complaint ¶¶ 9–10.) Further, at all relevant times, Defendant, as a signatory, remained bound by the Collective Bargaining Agreements and the Benefit Fund

---

Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

*Id.*

Plaintiffs' RA & DT. (*Id.* ¶ 11; Appendix, at 35; Poole Decl. ¶ 8.) During all relevant times, Defendant maintained employees covered by the Collective Bargaining Agreements, and, pursuant to those Agreements, Defendant agreed to pay certain sums of money for each hour worked by those employees. (Complaint ¶ 17; Poole Decl. ¶¶ 13–14.)

Under the Collective Bargaining Agreements, employers self-report the number of hours worked by each employee in a monthly report called a "Contribution Report" or "Remittance Report." (Memo. at 7; Poole Decl. ¶ 16.) Defendant's monthly employer contributions must be remitted to the Benefit Funds by the tenth day of the month after the month in which the work was performed. (Memo. at 8; Poole Decl. ¶ 15; Appendix at 11, 32.) To determine the amount owed each month, an employer multiplies the total number of hours reported on the Contribution Report by the applicable contribution rates in the Collective Bargaining Agreements. (Poole Decl. ¶ 15.) When an employer fails to submit reports to the Benefit Funds, the RA & DT provide a formula to project the amount owed by the employer based on the employer's recent contributions or reporting history. (Poole Decl. ¶ 17; *see also* Appendix at 12–13, 18–19, 24–25, 30 ("Projection of Delinquency").)

Defendant failed to submit Contribution Reports or pay the required contributions to the Benefit Funds for work performed by its covered employees in the months of October through and including December 2021. (Complaint ¶ 17; Poole Decl. ¶ 19.) Under the Collective Bargaining Agreements and the Benefit Funds' RA & DT, an employer who fails to pay the amounts required must pay liquidated damages in the amount of twenty percent (20%) of the total amount owed, together with interest from the date of delinquency to the date of payment,[7]

---

[7] The interest rate set forth in the governing documents of the Pension Fund, the Health and Welfare Fund and the Apprenticeship Fund is eighteen percent (18%) per annum from the date due until the date paid. For the Annuity Fund, the applicable interest rate is twelve percent

as well as all necessary costs of collection, including but not limited to reasonable attorneys' fees, and court costs. (Complaint ¶ 17; Poole Decl. ¶ 19; Appendix at 11–12, 16–17, 22–23, 28–29); see also 29 U.S.C. § 1132(g) (providing for interest, liquidated damages and reasonable costs and fees).

Upon review of the record before it, the Court concludes that Plaintiffs have alleged facts sufficient to support their claim for unpaid amounts owed to a Benefit Fund Plan pursuant to 29 U.S.C. §§ 1145 and 1132(g). Deeming all of Plaintiffs' alleged facts admitted due to Defendant's failure to respond, the Court finds that Plaintiffs' allegations establish that Defendant failed to file Contribution Reports and pay required contributions to the Benefit Fund Plaintiffs for the months of October, November and December 2021, in violation of binding Collecting Bargaining Agreements and 29 U.S.C. § 1145. Accordingly, the Court will GRANT Plaintiffs' Motion for Default Judgment as to Count One.[8]

### B.  Damages: Unpaid Contributions, Liquidated Damages and Interest

The Court must next determine the amount of damages to award Plaintiffs. In support of their claim for damages, the Benefit Fund Plaintiffs submit the declarations of Kevin Poole and Michael Shockley. (*See supra* notes 3 and 4 (background of declarants).) As explained below, the Court finds that the information contained in these declarations and other supporting exhibits establishes that Defendant owes the Benefit Fund Plaintiffs past-due contributions in the amount of $37,244.38.

---

(12%) per annum from the date due until the date paid. (Plaintiffs' Supplemental Filing (ECF No. 16) at 1–2; *see* Appendix at 10–11, 16–17, 22–23 (providing interest rate of "of up to eighteen percent annum"); *cf* Appendix (ECF No. 14-1) at 28–29 (providing interest rate of twelve percent).)

[8]  *See supra* note 1 (dismissing Count Two on Plaintiffs' Notice).

8

When an employer does not submit Contribution Reports, the RA & DT establishing the Benefit Funds provide a formula to project the amount owed by the employer based on the employer's recent contributions or reporting history. (Poole Decl. ¶ 17; Appendix at 12–13.) Specifically, the "Projection of Delinquency" provision provides that:

> Where an Employer is two or more months delinquent in making the contributions required on behalf of his Employees and has not submitted the required documents showing the Employees who worked for him and the hours worked, the Trustees may project as the amount of delinquency the greater of (a) the average of the monthly payments or reports submitted by the Employer for the last three (3) months for which payments or reports were submitted or (b) the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted.

(Memo. at 10; Appendix at 12–13, 18–19, 24–25, 30.) Here, Defendant failed to submit Contribution Reports or pay contributions for at least three months, October 2021 through December 2021. Accordingly, Plaintiffs rely on the second metric available under the "Projection of Delinquency" provision; "the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted." (Memo. at 10; Appendix at 12–13, 18–19, 24–25, 30.) The average of the monthly contributions required by Defendant for the last twelve months for which payments or reports were submitted is $12,414.79. (Memo. at 10; Suppl. Appendix (ECF No. 16-2) at 8, 11–12.) Therefore, the Court finds that Defendant's projected contributions owed under the RA & DT is $37,244.38 (or three months multiplied by $12,414.79). (Amend. Shockley Decl. ¶ 4.)

Plaintiffs are further entitled to an award of prejudgment interest on the unpaid contributions. Such interest "shall be determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2). The amount of interest authorized by three of the Benefit Fund Plaintiffs'—the Pension Fund, the Health and Welfare Fund and the Apprenticeship Fund—RA & DT is eighteen percent (18%) per annum. The applicable interest rate for the Annuity Fund is

twelve percent (12%) per annum. Accordingly, based on the calculations contained in the declarations and supporting documents submitted by Mr. Poole and Mr. Shockley, the Court finds the amount of interest accrued on unpaid contributions for October 2021 through and including December 2021, from the date the contributions were due through January 10, 2023, is $6,605.78.[9] (Amend. Shockley Decl. ¶ 5.) Interest at the prescribed rates shall continue to accrue until such contributions are paid in full.

Because Defendant's contributions remain unpaid, Plaintiffs may also recover "an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount [of unpaid contributions as] determined by the court." 29 U.S.C. § 1132(g)(2)(C); *cf. Plumbers & Pipefitters Local 625 v. Nitro Construction Servs. Inc.*, 27 F.4th 197, 201 (4th Cir. 2022) (finding that the plaintiff could not recover liquidated damages when the defendant's tardy contributions "were paid in full before th[e] suit was commenced"). The Benefit Fund Plaintiffs' RA & DT provide that the Court shall assess liquidated damages at the rate of twenty percent (20%) of the contributions owed. (Memo. at 11; Appendix at 11, 17, 23, 29 61; Amend. Shockley Decl. ¶ 5.) Upon due consideration, and because Defendant has failed to remit past-due contributions despite ample time in which to do so, the Court finds that Plaintiff's request of liquidated damages is both justified and appropriate. Therefore, liquidated damages shall be assessed at

---

[9] This figure represents

> a. 18% per annum from the date each payment came due through January 10, 2023 in the amount of $5,282.84 to the . . . Pension Fund, the . . . Health and Welfare Fund, and the . . . Apprenticeship Fund; and b. 12% per annum from the date each payment came due through January 1 0, 2023 in the amount of $1,322.94 to the . . . Annuity Fund.

(Amend. Shockley Decl. ¶ 5.)

twenty percent of each unpaid contribution, totaling $7,448.88 for the months of October, November and December 2021. (Amend. Shockley Decl. ¶ 5.)

### C. Attorneys' Fees and Costs

Finally, Plaintiffs request an award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(2)(C). In support, Plaintiffs submit the declaration of Jacob N. Szewczyk. (Szewczyk Decl. at 104–06.) Szewczyk is a senior associate with the law firm of O'Donoghue & O'Donoghue LLP. (*Id.* at 104.) As stated in the declaration, the total amount of fees incurred is $5,197.50 for 19.25 hours of attorney time at a rate of $270 per hour. (*Id.* at 105–06.) Additionally, plaintiff spent $912 for the filing fee and for process server alternative service fees in attempting to locate and serve Defendant. (*Id.*) The Court has reviewed the affidavit and itemized records and finds the requested fees and costs, totaling $6,109.50, reasonable.

### IV. CONCLUSION

Plaintiffs have satisfied the requirements for a default judgment, and the Court will enter a judgment in favor of Plaintiffs for $51,299.04 in unpaid contributions, liquidated damages and interest through January 10, 2023, plus $6,109.50 in attorneys' fees and costs. Additionally, Plaintiffs may recover interest at the prescribed rates from January 11, 2023 until Defendant pays such unpaid contributions in full.

An appropriate Order shall accompany this Memorandum Opinion.

Let the Clerk file a copy of this Memorandum Opinion and electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: February 2, 2023

11